**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1986-23

LOURDES RAMIREZ CAMEJO,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
UNION CITY BOARD OF
EDUCATION, BOGOPA
SERVICE CORPORATION
and UBER EATS,

     Respondents.

_____

Submitted May 21, 2025 – Decided August 4, 2025

Before Judges Currier and Torregrossa-O'Connor.

On appeal from the Board of Review, Department of Labor, Docket No. 224849.

Lourdes Ramirez Camejo, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent Board of Review, Department of Labor (Janet Greenberg Cohen, Assistant Attorney General,

of counsel; Kathryn B. Moynihan, Deputy Attorney General, on the brief).

PER CURIAM

Claimant Lourdes Ramirez Camejo appeals from the December 28, 2023 final decision of the Board of Review, Department of Labor (Board), finding her ineligible between various dates for both traditional unemployment benefits, under the Unemployment Compensation Act (UCA), N.J.S.A. 43:21-2 to -24.30, and alternatively for Pandemic Unemployment Assistance (PUA) under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C. §§ 9001-9141. Affording deference to the Board's determination, we affirm.

I.

A. Background of Claims

Claimant applied for PUA benefits on May 10, 2020. Between April 27, 2019 and April 16, 2020, claimant worked for Bogopa Services as a part-time supermarket cashier, until she stopped working there after testing positive for the COVID-19 virus on April 19. Union City Board of Education (Union City) employed claimant as a substitute teacher from July 3, 2019 to March 13, 2020, when schools closed due to the COVID-19 pandemic.

Bogopa sent claimant two letters on May 26, 2020, memorializing its approval of her requested leaves of absence on May 15 and May 29, 2020, but

A-1986-23

indicated that it was requiring her to return to work by early June 2020 or "the [c]ompany w[ould] consider [her] to have left the job voluntarily," rendering her ineligible to collect traditional unemployment benefits. Claimant never returned to work for Bogopa, claiming she continued to experience symptoms, despite two negative COVID-19 test results from May 29 and July 23, 2020. She later worked for Uber Eats between December 10, 2020 and April 24, 2021.

During this time, claimant received traditional unemployment benefits of $249 per week for the weeks ending May 30, 2020 through August 8, 2020, totaling $2,739.

On August 24, 2020, the Deputy Director of the Division of Unemployment and Disability Insurance (Division) sent a series of official written notices to claimant pertaining to her PUA claims. Ultimately, the Division notified claimant that, despite being qualified for PUA for the period beginning May 10, 2020 because she contracted COVID-19 and was therefore "unemployed due to a qualifying reason" under the CARES Act, she was subsequently disqualified from collecting benefits after May 24, 2020.

The notice further provided claimant "w[ould] continue to be disqualified until [she] ha[d] worked eight or more weeks in employment and ha[d] earned at least ten times [her] weekly benefit rate." It stated, "You left work voluntarily

on [May 29, 2020]," explaining claimant "abandoned [her] job when [she] did not return from a scheduled leave of absence on the date agreed upon with [her] employer" and "made no attempt to contact [her] employer at the expiration of the leave." The notice advised claimant's "actions demonstrate[d] [her] intention to sever the employer-employee relationship" as she "quit [her] job voluntarily and without good cause attributable to the work." Accordingly, on August 24, 2020, the Division Director sent a request for a refund of the benefits in the amount of $2,739 because she "w[as] not eligible for th[ose] [traditional] unemployment benefits." Claimant appealed the determination on August 31, and the Appeals Tribunal (Tribunal) notified claimant through email to provide copies of any medical documentation verifying her COVID-19 diagnoses.

B. Hearings and Appeals

1. January 4, 2021 Initial Hearing and Appeal

The Tribunal commenced a telephonic hearing on January 4, 2021. In her testimony, claimant contended she stopped working at Bogopa because she contracted COVID-19 and became "really sick and . . . c[ould not] go back." She recounted going to the hospital emergency room and receiving an initial positive COVID-19 test result on April 19, 2020 and a second positive result on May 14. Thereafter, she tested negative on May 29 and again on July 23, 2020.

Claimant described "feeling sick with weakness," being unable "to walk or carry heavy things," and, as a result, not returning to work. She stated she also declined to return because she was "afraid to get . . . [COVID-19]" again. She explained her employer called her "almost . . . every day," asking if she was able to return to work, and she replied she could not return because she "fe[lt] really bad and . . . c[ould not] even move from [her] bed."

Claimant testified a doctor diagnosed her in September 2020 with a thyroid condition and prescribed medication. The doctor never advised claimant she was medically unable to return to work, but said "it depend[ed] on [her]" and how she felt. She explained that she worked for Uber Eats between December 10, 2020 and April 24, 2021, but quit due to knee pain.

Claimant's sister testified that claimant experienced severe illness with the COVID-19 virus. Claimant's partner testified that he believed claimant contracted COVID-19 on the job and felt it would have been "pretty dangerous" to return to work because she would "have too much contact with . . . people[,] and this [wa]s not good."

The Tribunal issued its written decision finding claimant was: (1) ineligible for traditional unemployment benefits between May 10, 2020 and January 2, 2021 "as she was unable to work"; (2) eligible for PUA benefits

A-1986-23

between May 10, 2020 and May 23, 2020 based on her positive COVID-19 testing; (3) ineligible for PUA benefits between May 24, 2020 and January 2, 2021 because she failed to show a statutory COVID-19-related reason for her unemployment; (4) disqualified for traditional unemployment benefits as of May 24, 2020 under N.J.S.A. 43:21-5(a) "as she voluntarily left [her] job without good cause attributable to such work"; and (5) liable under N.J.S.A. 43:21-16(d) for a refund of $2,739 in benefits received between the weeks ending May 30 and August 8, 2020.

Claimant appealed the decision, and the Board ordered a remand back to the Tribunal for additional testimony from claimant regarding her separation from employment and whether claimant qualified for PUA benefits under the CARES Act.

### 2. Remand Hearing and Appeal

Claimant testified she was employed with Union City between July 2019 and March 13, 2020 as a substitute teacher until "schools closed due to the pandemic." She confirmed that after March 14, 2020, she never contacted Union City about returning to work.

Regarding her employment with Bogopa, claimant testified she became ill on April 15, 2020, and she requested and was granted a two-week leave of

absence on April 18. Claimant recalled that after two weeks, Bogopa reached out to her asking about her condition, and because claimant still felt sick, Bogopa gave her an additional week of leave. However, when claimant requested continued leave due to her symptoms, Bogopa asked that she provide positive COVID-19 test results. On June 4, claimant informed Bogopa that due to her illness, she would not be returning. She never presented any medical documentation or a doctor's letter during that period explaining the necessity for her leave, beyond the initial positive COVID-19 tests.

Claimant clarified that she elected to stop working for Uber Eats delivering food in April 2021 because she "felt tired[ and her] knees . . . hurt going in and out [of] the car," attributing those symptoms to COVID-19.

The Tribunal again advised claimant needed to provide all relevant medical documentation and adjourned the matter to afford claimant that opportunity. Claimant supplemented the record with only the negative COVID-19 test results from May and July 2020. The Tribunal noted claimant submitted no additional positive test results, but indicated she was still feeling COVID-19 symptoms, and claimed this hindered her ability to return to work.

The Tribunal issued its decision on February 10, 2022, affirming the initial determination but modifying it, finding claimant (1) ineligible for traditional

7

unemployment benefits between May 10, 2020 and December 5, 2020, "as she was unavailable for work and unable to work"; (2) eligible for traditional unemployment benefits from December 6, 2020 through April 24, 2021 "as she was available for work and able to work"; (3) ineligible for traditional unemployment benefits from April 25, 2021 through October 9, 2021, because she "was unavailable for work and unable to work"; and (4) disqualified from traditional unemployment benefits as of May 31, 2020 "as she voluntarily left [Bogopa] without good cause attributable to such work."

Claimant again appealed the Tribunal's decision to the Board. In its decision dated July 28, 2022, the Board found the Tribunal's findings of fact were "substantially correct and . . . affirmed and adopted" those findings in its decision, also incorporating all of claimant's COVID-19 test results. The Board found that claimant "reported earnings with [Uber Eats] when certifying for benefits from December 6, 2020 through May 8, 2021," and its records reflected "claimant worked eight weeks and earned ten times her weekly benefit rate of $249[] with [Uber Eats] as of February 6, 2021 after leaving her job with" Bogopa.

The Board confirmed claimant's traditional unemployment benefit ineligibility between May 10 and May 30, 2020 "since she was not available for

work," and found her disqualified and therefore also ineligible for traditional unemployment benefits between May 31, 2020 and February 6, 2021 because she "left work voluntarily without good cause attributable to the work." However, the Board found claimant's disqualification "ended as of February 6, 2021 since subsequent weeks and wages earned with [Uber Eats] were sufficient to overcome the disqualification period."

The Board also found claimant eligible for traditional unemployment benefits between February 7 and May 8, 2021 because she "demonstrated her availability and ability to work during the period in which she worked for" Uber Eats, and for PUA benefits between May 10 and May 23, 2020 "since she tested positive for the COVID-19 virus during that period." The Board found claimant ineligible for PUA benefits between May 24, 2020 and May 8, 2021 "since her unemployment was not due to the scenarios included under" the CARES Act. Lastly, it concurred with the Tribunal's requiring claimant to refund traditional unemployment benefits "received for the weeks ending May 30, 2020 and August 8, 2020" due to her ineligibility.

After claimant appealed the Board's decision to this court, we granted the Board's request for remand to allow the Board to further consider the matter.

9

### 3.  Board's Final Decision After Remand

The Board issued its final decision on December 28, 2023, replicating its previous decision, finding claimant:  (1) ineligible for traditional unemployment benefits between May 10 and May 30, 2020 under N.J.S.A. 43:21-4(c)(1); (2) disqualified and ineligible for traditional unemployment benefits between May 31, 2020 and February 6, 2021 under N.J.S.A. 43:21-5(a); (3) eligible for traditional unemployment benefits between February 6 and May 8, 2021 under N.J.S.A. 43:21-4(c)(1); (4) eligible for PUA benefits from May 10 through May 23, 2020; (5) ineligible for PUA benefits from May 24, 2020 through May 8, 2021, finding she failed to meet the CARES Act's eligibility requirements, specifically citing Section 2102(a)(3)(A)(ii)(I); and (6) liable for a $2,739 refund of benefits under N.J.S.A. 43:21-16(d).

The Board found:

> At . . . claimant's own admission, she was unavailable to work her full-time job with [Bogopa] which led to her separation from work.  Her decision to leave at that time was not supported by any medical certification. Although . . . claimant's work as a substitute teacher for [Union City] ended due to COVID-19, . . . claimant was not otherwise available for work while on a leave of absence from her full-time employment.

Finally, the Board recognized claimant satisfied her refund liability as of July 5, 2023.

## II.

Claimant appeals, asserting she is entitled to unemployment benefits because she was unavailable for work due to statutorily recognized pandemic-related reasons under the CARES Act. Claimant seeks "reconsider[ation of the] decision to request a refund of the [traditional] unemployment benefits [she] received." The Board contends the appeal is moot as claimant's overpayment has been refunded, and, alternatively, its benefit determination should not be disturbed.

## III.

"We review a decision made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard." E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). Accordingly, "we will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 155-56 (App. Div. 2022) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). The burden to show an agency's abuse of discretion "is on the challenger." Parsells v. Bd. of Educ. of Somerville, 472 N.J. Super. 369, 376 (App. Div. 2022).

A-1986-23

Initially, we decline to dismiss claimant's appeal as moot. Although claimant fully satisfied her outstanding refund liability, she challenges the Board's denials of both traditional unemployment benefits and PUA and its recoupment of those payments. Thus, our decision impacts whether claimant is entitled to benefits and, thus, whether she is entitled to a return of all or a portion of the funds she provided as a result of the Board's determination. See Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010) ("[A]n issue is moot when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." (internal quotation marks omitted) (quoting Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006))).

## A.

We first determine the Board correctly found claimant ineligible for traditional unemployment benefits between May 10 and May 30, 2020. "N.J.S.A. 43:21-4(c)(1) conditions eligibility for unemployment compensation upon a finding that the claimant 'is able to work, and is available for work, and has demonstrated to be actively seeking work.'" Ford v. Bd. of Rev., 287 N.J. Super. 281, 284 (App. Div. 1996). Claimant insisted unwaveringly that her illness prevented her from working. Thus, claimant conceded she was both

unable and unavailable for work between May 10 and May 30, 2020.

Next, we conclude the Board correctly found claimant was disqualified and ineligible for traditional unemployment benefits between May 31, 2020, and February 6, 2021. N.J.S.A. 43:21-5 provides:

> An individual shall be disqualified for benefits:
>
> > (a) For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in employment . . . and has earned in employment at least ten times the individual's weekly benefit rate, as determined in each case.

"'[G]ood cause attributable to such work' means a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." N.J.A.C. 12:17-9.1(b).

"The burden of proof is on the claimant to establish good cause attributable to such work for leaving," N.J.A.C. 12:17-9.1(c), and "the test is one of ordinary common sense and prudence," Domenico v. Bd. of Rev., 192 N.J. Super. 284, 288 (App. Div. 1983). "[I]t is the employee's responsibility to do what is necessary and reasonable in order to remain employed." Ibid. "When a non-work connected physical and/or mental condition makes it necessary for

13

an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work." N.J.A.C. 12:17-9.3(b).

We conclude the Board reasonably determined claimant's proffered reason for leaving employment did not constitute good cause attributable to her work under N.J.S.A. 43:21-5(a). Claimant cited her lingering COVID-19-related illness and her fear of contracting COVID-19 as her reasons for remaining unemployed after May 30, 2020. Although claimant testified she saw doctors between September and December 2020, she did not provide the requisite medical documentation to support her claims. See N.J.A.C. 12:17-9.3(d) ("[M]edical certification shall be required to support a finding of good cause attributable to work."). She conceded a doctor never provided medical advice against returning to employment. Claimant's leaving her employment for "personal reasons, however compelling," disqualified her from benefits under the statute. Utley v. Bd. of Rev., Dep't of Lab., 194 N.J. 534, 544 (2008). Further, the record lacks evidence claimant made reasonable efforts to preserve employment. See N.J.A.C. 12:17-9.3(c). Thus, the Board's finding claimant disqualified for traditional unemployment benefits until February 6, 2021 was grounded in the record and not arbitrary, capricious, or unreasonable.

14

B.

We next address the Board's denial of PUA benefits for the period between May 24, 2020 and May 8, 2021 and, affording appropriate deference, find its determination sufficiently anchored in the record.

Congress enacted the CARES Act as a means for certain "covered individual[s]" to seek PUA benefits if deemed ineligible for regular unemployment benefits during the pandemic, but still experienced unemployment for one of the COVID-19-related reasons listed in the statute. See Sullivan, 471 N.J. Super. at 153; see also 15 U.S.C. § 9021.

The CARES Act defines a "covered individual" as one who:

> (i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section [9025] . . . including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section [9025] . . . .
>
> (ii) provides self-certification that the individual—
>
> > (I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—

15

(aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;

(bb) a member of the individual's household has been diagnosed with COVID-19;

(cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct

16

result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section.

[15 U.S.C. § 9021(a)(3)(A).]

Here, claimant tested positive for COVID-19 on April 19 and May 14, 2020. Claimant, admittedly aware that Bogopa had only granted her leave until June 4, 2020, did not return to work despite her testing negative for COVID-19 on May 29, 2020 and thereafter. Claiming that her illness rendered her unable to work, claimant never provided medical documentation supporting that contention. We therefore discern no abuse of discretion in the Board's determining claimant failed to show the requisite nexus between her unemployment and the COVID-19 pandemic, as mandated by the CARES Act.

17

Based on claimant's repeated insistence that she was unable to work due to her illness, as evidenced by her leave from Bogopa, we similarly decline to disturb the Board's finding that "[a]lthough . . . claimant's work as a substitute teacher for [Union City] ended due to COVID-19, . . . claimant was not otherwise available for work while on a leave of absence from her full-time employment."

We are mindful of "the hardship many people . . . endured during the 2020 lockdown as a result of the COVID-19 pandemic," Sullivan, 471 N.J. Super. at 152, and the fears at that unprecedented time. Nevertheless, we discern nothing arbitrary, capricious, or unreasonable about the Board's denying claimant PUA benefits for the period between May 24, 2020 and May 8, 2021.

To the extent we have not addressed any remaining arguments, we determine they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

18

A-1986-23